UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY DAN GREEN,<br><br>              Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>              Defendant. | Case No. 3:15-cv-00318-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Now pending before the Court is Petitioner Kelly Dan Green's Petition for Review (Dkt. 2), filed on August 15, 2015, seeking review of the Social Security Administration's final decision to deny him disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

      **I.     BACKGROUND AND ADMINISTRATIVE PROCEEDINGS**

      On February 14, 2014, the ALJ issued a decision denying Petitioner's claims and finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 14-23). On or about March 14, 2014, Petitioner requested review from the Appeals Council. (AR 10.)  The Appeals Council affirmed the ALJ's decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the

ALJ erred by failing to accord proper weight to the opinion evidence in the file, and in particular, by disregarding the opinions of Petitioner's treating family practice doctor and examining psychologist. He also argues that the ALJ erred in finding that his subjective complaints of pain were less than fully credible, and in deciding to give little weight to the written statements from third parties that discussed Petitioner's limited ability to engage in daily activities. (Petitioner's Brief, Dkt. 17, at 6-16).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.     Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that although Petitioner had done "odd jobs" since the alleged onset date of disability, these activities did not bring him more than a few hundred dollars a month and therefore did not rise to the level of substantial gainful activity. (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and

MEMORANDUM DECISION AND ORDER - 4

meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: diabetes, hepatitis, lumbar spondylosis with grade I anterolisthesis of the L5 bone on the S1 bone, alcohol abuse, and an adjustment disorder which involved components of anxiety and depression.[1] (AR 16).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§

---

[1] Anterolisthesis describes a situation in which one vertebra is positioned abnormally relative to the vertebra below it. *See,* https://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx (Accessed March 22, 2017). Spondylolisthesis, according to the information cited by Petitioner, also involves the slippage of one vertebra relative to another, but in this case, the slippage is caused by a fracture in one of the vertebra. (Plaintiff's Brief at p. 3-4).

MEMORANDUM DECISION AND ORDER - 5

404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner's impairments, considered singly and in combination, did not meet or equal any of the listings for mental disorders. (AR 17).

    The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the caveat that he could lift more than ten pounds "frequently" and more than twenty pounds only "occasionally." The ALJ also determined that Petitioner had six-hour sitting, standing, and walking capacities, and that he could engage in climbing activities "frequently" but not "constantly."

    As far as cognitive and social functioning issues were concerned, the ALJ found

MEMORANDUM DECISION AND ORDER - 6

that Petitioner could maintain concentration in two-hour segments for simple routine tasks, as well as "well-learned" detailed tasks. Socially, the ALJ determined that Petitioner was capable of engaging in superficial contact with co-workers, supervisors, and the general public. (AR 18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner was not capable of performing his past relevant work, but that with an overall residual functional capacity for light work (subject to certain additional restrictions), he was still capable of performing other work that exists in significant numbers in the national economy. (AR 21-22).

### B. Analysis

The Court first addresses the claim that the ALJ erred by failing to give sufficient weight to the opinions of two doctors, Dr. Scott Harris and Dr. Rebecca Alexander. Dr. Harris was a family practice physician who treated Petitioner over a period of several years for back pain, diabetes, hepatitis, and other conditions, while Dr. Alexander was a

MEMORANDUM DECISION AND ORDER - 7

psychologist who examined Petitioner on one occasion and provided opinions as to his mental residual functional capacity.

In Social Security cases, both ALJs and courts reviewing an ALJ's decision "employ a hierarchy of deference to medical opinions depending on the nature of the services provided." *Ryan v. Comm'r. of Soc. Sec. Admin,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing standard in dissent); *See also, Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). This hierarchy distinguishes among three types of physicians: those who treat the claimant, those who examine the claimant but do not treat him, and those who neither examine nor treat but simply review the medical evidence prepared by others and provide opinions as to the presence or absence of functional limitations. Generally speaking, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Ryan,* 528 F.3d at 1204. If a treating doctor's opinion is not contradicted in the record by the opinion of another doctor, an ALJ may reject it only for clear and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1198; *Lester,* 81 F.3d at 830. The ALJ must accord "controlling weight" to a treating doctor's opinion if medically approved, diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence in the record. *Ligenfelter v. Astrue,* 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). This standard of deference to the opinions of treating doctors does not, however, require an ALJ to accept the opinion of any doctor, including a treating doctor, that is "brief, conclusory, and

MEMORANDUM DECISION AND ORDER - 8

inadequately supported by clinical findings." *Chaudry v. Astrue*, 688 F.3d 661 (9th Cir. 2012). An ALJ may also properly reject opinions of treating physicians where they are wholly based on the claimant's self-reporting and not backed up by any objective medical findings. *Turner v. Comm'r. Soc. Sec.,* 613 F.3d 1217, 1222-24 (9th Cir. 2010); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician. And, like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester,* 81 F.3d at 831.

    1.    **Dr. Harris's Opinions**

Petitioner reported a work related injury to his back several years before filing his claim. Specifically, he reported falling down a stairwell at a construction site around 2002, from which accident chronic low back pain resulted. (Plaintiff's Brief at p. 3; AR at 324). However, records from the 2002 to 2010 time frame are scant, and Petitioner continued to be employed during much of this time, either in construction or as a short order cook.

Petitioner began seeing Dr. Harris in December 2011, when he sought treatment for various medical problems, primarily severe hypertension and very elevated blood sugar levels. (AR 324). Records from that visit also indicate that Petitioner was having continual problems with low back pain around this time, and that he was taking Norco

MEMORANDUM DECISION AND ORDER - 9

three times a day to control that pain. Petitioner told Dr. Harris he experienced severe pain after standing for 30 to 45 minutes. However, he also informed Dr. Harris that he rode a bicycle for transportation and tried to walk about a half mile a day. (*Id.*).

On March 15 2012 Petitioner underwent an X-Ray of the lumbar spine, which revealed changes consistent with degenerative disc disease, as well as grade I anterolisthesis at the L5-S1 joint, and spondylolisthesis of the pars at the L5 vertebra.[2] (Petitioner's Brief, Dtk. 14, at p. 3). He returned to Dr. Harris in January 2012 for follow up treatment of diabetes and high blood pressure. (AR 320 321). The records indicate that there was a "clear progression in elevation of blood sugar levels over the past year." (AR 321). Dr. Harris counseled Petitioner on the importance of diet and exercise and increased medications to control blood pressure. (*Id.*). Over the course of the next year, Petitioner returned to Dr. Harris several times, primarily for reasons related to his blood pressure and blood sugar levels. (AR 342, 347-348, 366-67, 378-379, 384-387). By June of 2013 Dr. Harris was also treating Petitioner for hepatitis. (AR 366-67).

On December 11, 2013, Dr. Harris's completed a Residual Functional Capacity Questionnaire prepared by Petitioner's attorney. (AR 388-393). Dr. Harris described his diabetes, hypertension and hepatitis as being "mild" impairments his chronic low back

---

[2] Anterolisthesis describes a situation in which one vertebra is positioned abnormally relative to the vertebra below it. *See,* https://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx (Accessed March 22, 2017). Spondylolisthesis, according to the information cited by Petitioner but which the Court was unable to access, also involves the slippage of one vertebra relative to another, but in this case, the slippage is caused by a fracture in one of the vertebra. (Plaintiff's Brief at p. 3-4)

MEMORANDUM DECISION AND ORDER - 10

pain and related peripheral neuropathy as being "moderate" impairments. (AR 389). Dr. Harris also opined that Petitioner could sit, stand, walk, and to perform light work for no more than two hours out of an eight-hour work day. (AR 391-92). In a follow-up questionnaire dated January 28, 2014, Dr. Harris clarified that the Petitioner's disability was due to his back pain and diabetes, particularly the fact that he was by this time insulin dependent. Dr. Harris also indicated that Petitioner would be susceptible to falls with prolonged standing, due to numbness in his legs. Dr. Harris further stated that the "pins and needles" and "blurred vision" Petitioner experienced would be "reasonable results" of his conditions. (AR 408-409).

      The ALJ characterized Dr. Harris's opinions as "not supported by evidence and internally inconsistent." (AR 20). The ALJ also noted elsewhere in his opinion that Dr. Harris had described Petitioner's impairments as being only mild or moderate in severity. (AR 19).

      While the ALJ's reasons for deciding not to credit Dr. Harris's opinions were somewhat thinly described, they find ready support in the record. The medical records of Petitioner's visits to Dr. Harris, which have been summarized above, are generally unremarkable, and demonstrate only that Petitioner sought routine treatment over the course of two years for various chronic conditions, primarily hypertension, diabetes, and hepatitis. Chronic low back pain is mentioned in these records but is certainly not their focus, and nothing whatsoever in these records of office visits suggests that Petitioner's impairments were truly at disabling levels. The ALJ's conclusion that the Dr. Harris's

MEMORANDUM DECISION AND ORDER - 11

opinions were internally inconsistent also finds ready support in the record. To start with, Dr. Harris stated that his conclusions about Petitioner's limitations on sitting, walking, and standing were based on observations during clinic visits, but the records of those visits are notable for their absence of any significant descriptions of those disabling symptoms. Dr. Harris also stated that his opinions were based partially on the assessment of a state consultative physician, Dr. Christina Bjornstad. However, when Dr. Bjornstad examined Petitioner she found him not to be disabled at all. For these reasons, the Court respectfully disagrees with Petitioner's contention that the case must be remanded because the ALJ failed to specify the reasons supporting his decision. While Courts reviewing an ALJ's decision cannot be required to guess at what he or she was thinking and cannot engage in post hoc rationalization exercises, *Bray v. Commissioner of Social Security,* 554 F.3d 1219, 1225 (9th Cir. 2009), this case does not involve a case where the ALJ's decision was essentially unreviewable due to vagueness. In fact, quite the opposite is true. While it may have been preferable, in retrospect, had the ALJ fleshed out his thoughts as to Dr. Harris's opinion somewhat more, a quick review of the medical records reveals ample support for his overall conclusion. The ALJ's decisions in regard to Dr. Harris are therefore supported by clear and convincing reasons and do not require a remand.

    **2.    Dr. Alexander's Opinions**

Nor did the ALJ err in deciding not to credit the opinion of Dr. Alexander. Dr. Alexander saw Petitioner only once, in March of 2012, when she performed a

MEMORANDUM DECISION AND ORDER - 12

psychological diagnostic evaluation and mental status examination of Petitioner in March of 2012. (AR 326-331). Dr. Alexander diagnosed Petitioner as having an adjustment disorder with mixed anxiety and depressed mood, (AR 330), but the results of her examination were otherwise unremarkable and her report identified no mental impairments of the type that would interfere with the Petitioner's ability to work. Over a year and a half later, in August of 2013, Dr. Alexander also completed a Mental Residual Functional Capacity Assessment. (AR 373-377). This assessment referred back to the March 2012 clinic visit and was not based on any new information or interaction with Petitioner. (AR 377). Dr. Alexander rated Petitioner as having either no limitations or at worst mild limitations in all areas of mental functioning for which she was asked to comment. The sole exception was the box marked "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Here, Dr. Alexander described Petitioner as having "moderate" limitations. The ALJ rejected this opinion because it lacked foundation, given that Dr. Alexander had described at worst mild limitations in every other category of mental functioning–a decision that fully comports with reason and logic. (AR 19). The Court notes that Dr. Alexander's opinions were also inconsistent with those of Dr. Bjornstand, who examined Petitioner at the behest of Idaho State Disability Determination Services and who opined that he was qualified to perform light work. (AR 332-335). Dr. Bjornstad also noted that Petitioner was taking more pain medication than was prescribed for him and that this was a likely

MEMORANDUM DECISION AND ORDER - 13

cause of his fatigue. *(Id.)*. For these reasons, the ALJ's decision to discount Dr. Alexander's opinions met the relevant legal standards.[3]

### C.     Petitioner's Credibility

The Court next addresses Petitioner's argument that the ALJ erred in making an adverse credibility determination. Here too the Court finds that no error occurred.

The Ninth Circuit has held that "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on "clear and convincing reasons." *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). If the record establishes the existence of an underlying impairment that could produce the symptoms described, "an ALJ may find testimony not credible in part or in whole, [but] he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration,* 466 F.3d 880 (9th Cir. 2006). Unless there is affirmative evidence of malingering in the record, an ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Schow v. Astrue,* 272 Fed.Appx. 647, 651 (9th Cir. 2008). "General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what

---

[3] Though Dr. Alexander's opinion was contradicted by Dr. Bjornstad, even if this were not the case, the Court would still find that the ALJ's decision to reject the Alexander opinion would meet the "clear and convincing reasons" standard, due to the blatant internal inconsistency between the majority of Dr. Alexander's opinions and her opinion that Petitioner could not complete a normal workday without interruption from psychologically based symptoms.

MEMORANDUM DECISION AND ORDER - 14

evidence undermines the claimant's complaints." *Berry v. Astrue,* 622 F.3d. 1228, 1234 (9th Cir. 2010). In weighing credibility, the ALJ may consider the claimant's reputation for truthfulness or lying, inconsistencies in his testimony or between his testimony and his conduct or the medical records, the claimant's daily activities and work record, as well as testimony from third parties about the nature, severity, and effect of the symptoms about which he complains. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ's decision on Petitioner's credibility met these standards. In the first place, the ALJ stated that "the claimant's treatment records fail to show or even support any of the claimant's disability asserted allegations." (AR 20). Having carefully reviewed the record, the Court agrees. While the medical records do contain several references to numbness in the feet and legs and a sensation of "pins and needles" at those extremities, the records contain at best only occasional mention of headaches, a tendency to fall, or blurred vision. (AR 343, 347, 354, 366, 378, 379, 385, 405, 413).  In other words, the medical records contain only scant mention of the very symptoms that Petitioner relies upon to support his assertion that his relatively common medical conditions are in fact disabling. While ALJs may not base adverse credibility determinations *solely* on the lack of objective medical evidence to support the claimed symptoms, at the same time, they are not required to turn a blind eye to a stark disconnect between a claimant's allegations at the hearing and the medical records. In fact, the Ninth Circuit has held that lack of medical evidence may be a factor (albeit in combination with other factors) upon which ALJs can rely in performing their credibility analyses. *Burch v. Barnhart,* 400 F.3d 676,

MEMORANDUM DECISION AND ORDER - 15

681 (9th Cir. 2005).

      Besides the discrepancy between the medical records and the Petitioner's subjective complaints, the ALJ cited several other reasons in support of his finding that Petitioner's subjective complaints were not entirely credible. These reasons included the fact that Petitioner had worked odd jobs during the period of claimed disability, as well as the fact that he had received unemployment benefits during part of 2011 and 2012, which "required him to present as able-bodied and looking for work." (AR 20). The ALJ also stated that Petitioner had at times been non-compliant with medical advice, particularly with respect to his alcohol use, and that in July of 2013 when he had cut down on his drinking he felt better. The ALJ also noted discrepancies between the symptoms that Petitioner described initially and those that he described upon "further prompting" from his attorney. Finally, the ALJ also noted the fact that claimant came to the hearing using a cane, which had not been prescribed for him and which he had borrowed.  (AR 20).

      The Ninth Circuit has held that "continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014). Petitioner argues that this usual rule should not apply in this case, because he was seeking work that was sedentary and that given his age and skill level, he was not likely to be qualified for any work that he was physically capable of performing. (Petitioner's Brief at p. 15). It is true that receipt of unemployment benefits does not automatically mean that a person cannot be disabled, and that individuals seeking disability face something of a Hobson's

MEMORANDUM DECISION AND ORDER - 16

choice when deciding to pursue a claim for both disability and for unemployment benefits. However, this case is factually distinct because during the period he claimed disability Petitioner was actually performing some level of light work, albeit not at rate that rose to the level of substantial gainful employment.  Petitioner also received unemployment benefits for nearly a year, from July of 2011 to March of 2012. The ALJ also noted that despite claiming to be disabled by chronic leg pain, dizziness, and an inability to stand for long periods, Petitioner nonetheless performed odd jobs that brought him a few hundred dollars a month at a time when his rent was only $50 per month. (AR 20). The ALJ evidently found it somewhat suspicious that claimant came to the hearing using a cane when no doctor had ever prescribed one.  All of these facts, together with the record of Petitioner's other daily activities, (walking occasionally, grocery shopping, doing dishes and other chores and preparing meals) demonstrates to the satisfaction of this Court that the ALJ did not err in finding Petitioner less than fully credible. Taken as a whole, the ALJ's reasons comport with the legal standards requiring that an adverse credibility determination be based on clear and convincing evidence.

### D.  Third Party Witness Statement

Finally, the Court also disagrees with Petitioner's contention that the ALJ erred in his assessment of a third party witness statement provided by Petitioner's sister, Diane Welch. (AR 291-299). Though this report  did suggest that Petitioner was not as active as he used to be, it also lacked the kind of focused information that would have been useful in arriving at a residual functional capacity assessment. For this reason, the Court finds no

MEMORANDUM DECISION AND ORDER - 17

error in the ALJ's conclusion that Ms. Welch's statement was "not particularly informative and simply supported his decline in activities." (AR 20).

## IV.  ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.



DATED:  **March 28, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge